**Mont. LBF 8. MOTION TO MODIFY STAY; AND NOTICE.**
[Mont. LBR 4001-1(a)]

Lewis N. Stoddard, Bar Number 60723896
HALLIDAY, WATKINS & MANN, P.C.
Attorneys for NewRez LLC d/b/a Shellpoint Mortgage Servicing
376 East 400 South, Suite 300
Salt Lake City, UT 84111
Telephone: 801-355-2886
Facsimile: 801-328-9714
Email: lewis@hwmlawfirm.com
File No.: 55101

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | | |
|---|---|---|
| In re | ) | |
| | ) | Case No. 20-10066-BPH |
| LUCUS PAUL WILLETTE AND | ) | |
| CHEYENNE CHERIEE | ) | |
| WILLETTE fka CHEYENNE | ) | |
| CHERIEE BROCK | ) | |
| | ) | |
| Debtors. | ) | |

## MOTION TO MODIFY STAY; AND NOTICE

The Motion of NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Creditor")

respectfully represents:

1.     The Debtors filed a Petition in this Court under Chapter 7 of the Bankruptcy Code

on April 28, 2020.

2.     Creditor is the holder of a secured claim against the Debtors, and pursuant to

Mont. LBR 4001-1, provides the following information:

(a)  The present balance owing to Creditor, excluding any precomputed interest or
other unearned charges, is, as of  May 20, 2020, as follows:

| Principal Balance | $195,848.58 |
|---|---|
| Interest | $11,425.30 |

- 1 -

| Fees | $6,410.60 |
| Funds Owed by Borrower | $6,825.17 |
| Funds Owed to Borrower | $0.00 |
| Total Payoff Amount | $220,509.65 |

(b)  The date upon which the subject debt was incurred was February 28, 2017.

(c)  Creditor holds a security interest or lien upon the following described property of the estate:

> Lot 1 and the North 12 Feet of Lot 2 in Block 2 of Nels Bach's Second Addition to the Townsite of Sidney, Montana, according to the Second Plat thereof on filed in the office of the Clerk and Recorder in Richland County, Montana (the "Property").

(d)  The nature of Creditor's security interest, the date upon which the security interest was obtained, and the date upon which the security interest was perfected are as follows:

> Creditor is a secured creditor whose claim is secured by the Property, as evidenced by that certain Deed of Trust dated February 28, 2017 (the "Deed of Trust").  The lien created by the Deed of Trust was perfected by recording of the Deed of Trust in the office of Richland County on February 28, 2017.  All rights and remedies under the Deed of Trust have been assigned to the Creditor pursuant to an assignment of deed of trust, attached hereto as an Exhibit.

Creditor has attached to this Motion copies of all security agreements, financing statements, titles, and other perfection documents necessary to prove the validity of its security interest.

(e)  Creditor has standing to file this motion on the following grounds:

> Creditor is an entity entitled to enforce the promissory note that the Debtors have executed and delivered or with respect to which the Debtors are otherwise obligated.

(f)  A description of Creditor's collateral, including its location, is as follows:

> The Property and all other collateral described in the Deed of Trust, a copy of which is attached.

(g)  The fair market value of Creditor's collateral is  $179,400.00 according to the Debtors' Statements and Schedules.

(h)  A description of, and the amounts due upon, any other security interests are as follows:

- 2 -

N/A

**(i)** If the Debtors are in default, the number of defaulted installments and the total amount in default are, as of   May 20, 2020, as follows:

| Number of Defaulted Installments | From | To | Monthly Payment Amount | Total Amount in Default |
|---|---|---|---|---|
| 10 | November 1, 2018 | August 1, 2019 | $1,277.06 | $12,770.60 |
| 9 | September 1, 2019 | May 1, 2020 | $1,299.08 | $11,691.72 |
| | Less partial payments: | | | ($0.00) |

**Total: $24,462.32**

In addition to the amounts listed above, Debtors are obligated to make on-going monthly payments, pursuant to the express terms of the Note and Deed of Trust that have or will accrue after May 20, 2020.

Creditor attests that it responded promptly and thoroughly to the trustee's or to the Debtors' reasonable requests for account information.

**(j)** If the Creditor alleges a postpetition payment default by the Debtors, the amount and date of the payments the Debtors are alleged to have failed to make are, as of May 20, 2020, as follows:

See paragraph (i) above.

Creditor attests that it responded promptly and thoroughly to the trustee's or to the Debtors' reasonable requests for account information.

**(k)** This Motion is made under and pursuant to the following subsection of 11 U.S.C. §§ 362: (d)(1) & (d)(2).

3.      Creditor further represents that in the event the Court grants this Motion, Creditor will seek foreclosure and liquidation of the above-described collateral in accordance with applicable nonbankruptcy law.  Upon disposition of such collateral, Creditor will account for all proceeds to the Court, and trustee, if applicable, and agrees to turn over any proceeds in excess of Creditor's allowed secured claim to the Court, and trustee, if applicable.

4.      Creditor requests that in the event that the Court grants this Motion, that the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

WHEREFORE, Creditor moves the Court to grant this Motion to Modify Stay, and to grant such other relief as the Court may deem appropriate.

DATED this 22nd day of June, 2020.

/s/ Lewis N. Stoddard
Lewis N. Stoddard
Attorney for NewRez LLC d/b/a Shellpoint
Mortgage Servicing

## NOTICE OF OPPORTUNITY TO RESPOND
## AND REQUEST A HEARING

**If you object to the motion, you must file a written responsive pleading and request a hearing within fourteen (14) days of the date of the motion. The objecting party shall schedule the hearing and shall include in the caption of the responsive pleading in bold and conspicuous print the date, time and location of the hearing by inserting in the caption the following:**

**NOTICE OF HEARING**
**Date: _____**
**Time: _____**
**Location: _____**

**This contested matter shall be scheduled for hearing for the next hearing date scheduled in the division within which the case is filed. The date, time and location of the hearing can be obtained from the Clerk of Court or from the Court's website at www.mtb.uscourt.gov. In the event such scheduled hearing date is thirty (30) days beyond the filing date of the motion for relief, then a preliminary hearing within such thirty (30) day period shall be scheduled by the responding party after such party contacts the Clerk of Court to confirm the preliminary telephone hearing date and time, which shall be set forth in the response.**

**If you fail to file a written response to the above Motion to Modify Stay with the particularity required by Mont. LBR 4001-1(c), and request a hearing, within fourteen (14) days of the date of this Notice, with service on the undersigned and all parties entitled to service under all applicable rules, then your failure to respond or to request a hearing will be deemed an admission that the motion for relief should be granted without further notice or hearing.**

DATED this _22nd_ day of June, 2020

/s/  Lewis N. Stoddard_____
Lewis N. Stoddard
Attorney for NewRez LLC d/b/a Shellpoint
Mortgage Servicing

<u>CERTIFICATE OF MAILING</u>

I, the undersigned, Lewis N. Stoddard, do hereby certify under penalty of perjury that a copy of the within and foregoing Motion to Modify Stay and Notice was sent by first class mail postage prepaid on the 22nd day of June, 2020, Salt Lake City, Utah, and directed to the following:

Lucus Paul Willette and Cheyenne Cheriee Willette
2336 3rd St NW
Sidney , MT 59270
Debtors
VIA U.S. MAIL

Bret T Allred
Yellowstone Law Group LLC
117 North Bent Street, Suite B
Powell, WY 82435
Debtors' Attorney
VIA ECF

Joseph V. Womack
303 North Broadway, Suite 805
Billings, MT 59101
Chapter 13 Trustee
VIA ECF

United States Trustee
720 Park Blvd, Ste 220
Boise, ID 83712
VIA ECF

/s/  Lewis N. Stoddard
Lewis N. Stoddard
Attorney for NewRez LLC d/b/a Shellpoint
Mortgage Servicing

# EXHIBIT "A"

MIN: ▮▮▮▮▮▮▮▮   LOAN #: ▮▮▮▮▮

# NOTE

February 28, 2017
[Date]

Sidney,
[City]

Montana
[State]

402 10th Ave SW, Sidney, MT 59270
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$201,919.00**        (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is  **Stockman Bank of Montana, a Corporation.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a
yearly rate of   **3.625 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section
6(B) of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  **1st**           day of each month beginning on  **April 1, 2017.**
I will make these payments every month until I have paid all of the principal and interest and any other charges described
below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be
applied to interest before Principal. If, on  **March 1, 2047,**                   I still owe amounts under this Note, I will
pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  **700 Main Street
Miles City, MT 59301**

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. **$920.85.**

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known
as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate
a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will
use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply
my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to
reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in
the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest
or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any
such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any

**MULTISTATE FIXED RATE NOTE**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**   **Form 3200 1/01**
Ellie Mae, Inc.                                       Page 1 of 3                                          F3200NOT  0107
                                                                                                         F3200NOT (CLS)
                                                                                                   02/27/2017 11:15 AM PST

**LOAN #:** ████████

sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which

Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**LOAN #** ███████

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
**LUCUS P WILLETTE**

_____ (Seal)
**CHEYENNE C WILLETTE**

Lender: Stockman Bank of Montana
NMLS ID: ███████
Loan Originator: Cheryl VanEvery
NMLS ID: ███████

PAY TO THE ORDER OF: Ditech Financial LLC
WITHOUT RECOURSE
Stockman Bank of Montana

BY: _____

TITLE: Carolyn Rausch, Assistant Vice President

**[Sign Original Only]**

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3200 1/01
Ellie Mae, Inc.
Page 3 of 3
F3200NOT  0107
F3200NOT (CLS)
02/27/2017 11:15 AM PST

# EXHIBIT "B"

BOOK B 279 PAGE 362

```
      595435 BOOK: 279  MORTGAGE    PAGE: 362  Pages: 15
     STATE OF MONTANA RICHLAND COUNTY
     RECORDED: 02/28/2017  4:20  KOI: MORTGAGE
     STEPHANIE VERHASSELT  CLERK AND RECORDER
     FEE:$105.00        BY:   [signature]
     TO: STOCKMAN BANK OF MONTANA  2700 KING AVE WEST, BILLING, MT
```

**When recorded, return to:**
**Stockman Bank of Montana**
**2700 King Ave West**
**Billings, MT 59102**

LOAN #: [redacted]

_____ [Space Above This Line For Recording Data] _____

[redacted]

# DEED OF TRUST

**Trust Indenture Under the Small Tract Financing Act of Montana**

| MIN: [redacted] |
| --- |

**MERS PHONE #: 1-888-679-6377**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "**Security Instrument**" means this document, which is dated **February 28, 2017,** together with all Riders to this document.

**(B)** "**Borrower**" is   **LUCUS P WILLETTE AND CHEYENNE C WILLETTE, JOINT TENANTS.**

Borrower is the trustor under this Security Instrument.

**(C)** "**Lender**" is   **Stockman Bank of Montana.**

Lender is **a Corporation,**                                                      organized and existing
under the laws of  **Montana.**                                                    Lender's address is
**700 Main Street, Miles City, MT 59301.**

**(D)** "**Trustee**" is   Richland County Title, LLC, 1050 South Central Avenue, Sidney, MT 59270.

**(E)** "**MERS**" is the Mortgage Electronic Registration Systems, Inc. Lender has appointed MERS as the nominee for Lender for this Loan, and attached a MERS Rider to this Security Instrument, to be executed by Borrower, which further describes the relationship between Lender and MERS, and which is incorporated into and amends and supplements this Security Instrument.

**(F)** "**Note**" means the promissory note signed by Borrower and dated **February 28, 2017.**
The Note states that Borrower owes Lender **TWO HUNDRED ONE THOUSAND NINE HUNDRED NINETEEN AND NO/100** * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
Dollars (U.S. **$201,919.00**                 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **March 1, 2047.**            This Security Instrument secures 150% of the amount of the Note.

**(G)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

**MONTANA**--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT Form 3027 1/01 (rev. 12/03)**

Ellie Mae, Inc.                          Page 1 of 11                          MTEDEED  0315
                                                                               MTEDEED (CLS)
                                                                               02/27/2017 11:15 AM PST

[redacted]

BOOK B279 PAGE 363

LOAN #: ■

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider     ☐ Condominium Rider     ☐ Second Home Rider
☐ Balloon Rider             ☐ Planned Unit Development Rider     ☐ V.A. Rider
☐ 1-4 Family Rider          ☐ Biweekly Payment Rider
☒ Mortgage Electronic Registration Systems, Inc. Rider
☐ Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County**          of    **Richland**
                         [Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]:
**Lot 1 and the North 12 Feet of Lot 2 in Block 2 of Nels Bach's Second Addition to the Townsite of Sidney, Montana, according to the second Plat thereof on filed in the office of the Clerk and Recorder in Richland County, Montana.**

**Deed Reference:** ■
**APN #:** ■

which currently has the address of    **402 10th Ave SW, Sidney,**
                                                                                [Street] [City]
**Montana   59270**               ("Property Address"):
              [Zip Code]

MONTANA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3027 1/01 (rev. 12/03)
Ellie Mae, Inc.                          Page 2 of 11                          MTEDEED   0315
                                                                               MTEDEED (CLS)
                                                                               02/27/2017 11:15 AM PST

BOOK B 2 7 9 PAGE 364

LOAN #:

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items

BOOK B 2 7 9 PAGE 365

LOAN #: ████████

for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall



BOOK B 2 7 9 PAGE 366

LOAN #: ▓▓▓▓▓

become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest

BOOK B 2 7 9 PAGE 367

LOAN #: ███████

in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the note, another insurer, any reinsurer, any other entity, or affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provided that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would

BOOK B 2 7 9 PAGE   368

be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted

MONTANA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3027 1/01 (rev. 12/03)

Ellie Mae, Inc.                                      Page 7 of 11                                      MTEDEED   0315
                                                                                                       MTEDEED (CLS)
                                                                                     02/27/2017 11:15 AM PST

BOOK B279 PAGE 369

LOAN #: ▮▮▮▮▮▮

limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer,

BOOK B279 PAGE 370

LOAN #

Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Lender or Trustee shall record a notice of sale in each county in which any part of the Property is located, and Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence

MONTANA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3027 1/01 (rev. 12/03)
Ellie Mae, Inc.                    Page 9 of 11                    MTEDEED  0315
MTEDEED (CLS)
02/27/2017 11:15 AM PST

BOOK B279 PAGE 371

LOAN #: ▮▮▮▮▮

of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk or recorder of the county in which the sale took place.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Area of Property.** The area of the Property is not more than 40 acres.

26. **Waiver of Homestead Exemption Rights.** In conformance with the provisions of § 70-32-202, M.C.A., this transaction involving a mortgage upon real property for purposes of securing a debt on premises, as subject hereto, and executed and acknowledged by the husband and wife, or by an unmarried person, the undersigned grantors have by separate written waiver, which waiver is incorporated herein by this reference, waived, renounced and abandoned for themselves and their family, any and all homestead exemption rights or other exemption law now or subsequently enforced within the State of Montana, or any other state or territory where judgment may be entered by virtue of this agreement or in the event of a sale pursuant to the provisions of the Montana Small Tract Financing Act.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____   2-28-17 (Seal)
LUCUS P WILLETTE                                              DATE

_____   2-28-17 (Seal)
CHEYENNE C WILLETTE                                       DATE

BOOK B279 PAGE 372

LOAN #: ███████

STATE OF MONTANA                                      (County) of RICHLAND

This instrument was acknowledged before me on FEBRUARY 28, 2017 (date) by LUCUS P WILLETTE AND CHEYENNE C WILLETTE (name(s) of person(s)).

[My commission expires: 3-19-2017 ]

JENNIFER MEREE LEAR
NOTARY PUBLIC for the
State of Montana
Residing at Sidney, Montana
My Commission Expires
March 19, 2017

SEAL

_____
(Signature of notarial officer)

Notary Public
Title (and Rank)

(Seal, if any)

Lender: Stockman Bank of Montana
NMLS ID: ██████
Loan Originator: Cheryl VanEvery
NMLS ID: ██████

MONTANA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3027 1/01 (rev. 12/03)
Ellie Mae, Inc.                              Page 11 of 11                    MTEDEED  0315
                                                                              MTEDEED (CLS)
                                                                              02/27/2017 11:15 AM PST

BOOK B 279 PAGE 373

LOAN #: ▮▮▮▮▮▮
MIN: ▮▮▮▮▮▮

# MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. RIDER
(MERS Rider)

THIS MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. RIDER ("MERS Rider") is made this **28th** day of **February, 2017,** and is incorporated into and amends and supplements the Deed of Trust (the "Security Instrument") of the same date given by the undersigned (the "Borrower," whether there are one or more persons undersigned) to secure Borrower's Note to **Stockman Bank of Montana, a Corporation**

("Lender") of the same date and covering the Property described in the Security Instrument, which is located at:
**402 10th Ave SW, Sidney, MT 59270.**

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree that the Security Instrument is amended as follows:

   A. DEFINITIONS

     1. The Definitions section of the Security Instrument is amended as follows:

     **"Lender"** is **Stockman Bank of Montana.**

Lender is **a Corporation** organized and existing under the laws of **Montana.** Lender's address is **700 Main Street, Miles City, MT 59301.**

Lender is the beneficiary under this Security Instrument. The term "Lender" includes any successors and assigns of Lender.

     **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is the Nominee for Lender and is acting solely for Lender. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. MERS is appointed as the Nominee for Lender to exercise the rights, duties and obligations of Lender as Lender may from time to time direct, including but not limited to appointing a successor trustee, assigning, or releasing, in whole or in part this Security Instrument, foreclosing or directing Trustee to institute foreclosure of this Security Instrument, or taking such other actions as Lender may deem necessary or appropriate under this Security Instrument. The term "MERS" includes any successors and assigns of MERS. This appointment shall inure to and bind MERS, its successors and assigns, as well as Lender, until MERS' Nominee interest is terminated.

     2. The Definitions section of the Security Instrument is further amended to add the following definition:

     **"Nominee"** means one designated to act for another as its representative for a limited purpose.

MERS RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3158 04/2014
Ellie Mae, Inc.            Page 1 of 4            F3158RDU 1014
                                             F3158RLU (CLS)
                                   02/27/2017 11:15 AM PST



BOOK B 2 7 9 PAGE 374

LOAN #: ▉▉▉▉▉

**B.  TRANSFER OF RIGHTS IN THE PROPERTY**

The Transfer of Rights in the Property section of the Security Instrument is amended to read as follows:

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
County                                    [Type of Recording Jurisdiction] of
Richland                                   [Name of Recording Jurisdiction]:
**Lot 1 and the North 12 Feet of Lot 2 in Block 2 of Nels Bach's Second Addition to the Townsite of Sidney, Montana, according to the second Plat thereof on filed in the office of the Clerk and Recorder in Richland County, Montana.**

**Deed Reference:** ▉▉▉▉▉
**APN #:** ▉▉▉

which currently has the address of **402 10th Ave SW, Sidney,**

[Street][City]

**MT 59270**                      ("Property Address"):
[State] [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Lender, as the beneficiary under this Security Instrument, designates MERS as the Nominee for Lender. Any notice required by Applicable Law or this Security Instrument to be served on Lender must be served on MERS as the designated Nominee for Lender. Borrower understands and agrees that MERS, as the designated Nominee for Lender, has the right to exercise any or all interests granted to Borrower to Lender, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, assigning and releasing this Security Instrument, and substituting a successor trustee.

**C.  NOTICES**

Section 15 of the Security Instrument is amended to read as follows:

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address

**MERS RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Form 3158 04/2014
Ellie Mae, Inc.                           Page 2 of 4                    F3158RDU  1014
                                                                         F3158RLU (CLS)
                                                                         02/27/2017 11:15 AM PST

BOOK B 279 PAGE 375

LOAN # █████████

by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Borrower acknowledges that any notice Borrower provides to Lender must also be provided to MERS as Nominee for Lender until MERS' Nominee interest is terminated. Any notice provided by Borrower in connection with this Security Instrument will not be deemed to have been given to MERS until actually received by MERS. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

### D. SALE OF NOTE; CHANGE OF LOAN SERVICER; NOTICE OF GRIEVANCE

Section 20 of the Security Instrument is amended to read as follows:

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. Lender acknowledges that until it directs MERS to assign MERS's Nominee interest in this Security Instrument, MERS remains the Nominee for Lender, with the authority to exercise the rights of Lender. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

### E. SUBSTITUTE TRUSTEE

Section 24 of the Security Instrument is amended to read as follows:

**24. Substitute Trustee.** In accordance with Applicable Law, Lender or MERS may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee

MERS RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3158 04/2014
Ellie Mae, Inc.                                Page 3 of 4                          F3158RDU  1014
                                                                                     F3158RLU (CLS)
                                                                                     02/27/2017 11:15 AM PST

BOOK B 2 7 9 PAGE 376

**LOAN #:** ▆▆▆▆▆▆▆

shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this MERS Rider.

_Lucus P Willette_ _____ 2-28-11 (Seal)
**LUCUS P WILLETTE**                              **DATE**

_Cheyenne C Willette_ _____ 2-28-17 (Seal)
**CHEYENNE C WILLETTE**                          **DATE**

MERS RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3158 04/2014
Ellie Mae, Inc.                    Page 4 of 4                    F3158RDU  1014
                                                                  F3158RLU (CLS)
                                                                  02/27/2017 11:15 AM PST

# EXHIBIT "C"

BOOK **D 18** PAGE **387**

PREPARED BY:
Halliday, Watkins & Mann, P.C.
376 East 400 South, Suite 300
Salt Lake City, UT 84111
Phone: 801-355-2886

AFTER RECORDING RETURN TO:
Halliday, Watkins & Mann, P.C.
376 East 400 South, Suite 300
Salt Lake City, UT 84111

HWM # ▮▮▮

603601 BOOK: 18   ASSIGNMENT PAGE: 387  Pages: 2
STATE OF MONTANA RICHLAND COUNTY
RECORDED: 06/20/2019  1:34  KO1: ASSN MRTG
STEPHANIE VERHASSELT  CLERK AND RECORDER
FEE: $24.00   BY: *Candiur Tater*
TO: HALLIDAY, WATKINS & MANN, P.C.  376 EAST 400 SOUTH, SUITE

## ASSIGNMENT OF DEED OF TRUST

**MERS MIN No.** ▮▮▮▮▮
**MERS Phone No. 1-888-679-6377**

KNOW ALL MEN BY THESE PRESENTS:

That **Mortgage Electronic Registration Systems, Inc. ("MERS"), as designated nominee for Stockman Bank of Montana, Beneficiary of the security instrument, its successors and assigns** ("ASSIGNOR") whose address is P.O. Box 2026, Flint, MI 48501-2026, for value received, does by these presents grant, assign, transfer and set over unto **Ditech Financial LLC** ("ASSIGNEE") whose address is **2100 E. Elliot Road, Bldg. 94, Mail Stop T325, Tempe, AZ 85284**, all of Assignor's right, title and interest in and to that certain Deed of Trust, describing land therein, recorded in the County of **Richland** State of Montana, as follows:

| NAME OF BORROWER | DATE EXECUTED | DATE RECORDED | INSTRUMENT NUMBER | BOOK | PAGE |
|---|---|---|---|---|---|
| **Cheyenne C. Willette and Lucus P. Willette** | **02/28/2017** | **02/28/2017** | **595435** | **B279** | **362** |

| | |
|---|---|
| BENEFICIARY: | **Mortgage Electronic Registration Systems, Inc. as nominee for Stockman Bank of Montana, its successors and assigns** |
| TRUSTEE: | **Richland County Title, LLC** |
| PROPERTY ADDRESS: | **402 10th Avenue Southwest, Sidney, MT 59270** |
| LEGAL DESCRIPTION: | **Lot 1 and the North 12 Feet of Lot 2 in Block 2 of Nels Bach's Second Addition to the Townsite of Sidney, Montana, according to the Second Plat thereof on filed in the office of the Clerk and Recorder in Richland County, Montana.** |

**(remainder of page intentionally left blank)**

**402 10th Avenue Southwest, Sidney, MT 59270 - AOM**

BOOK **D 1 8**   PAGE   **388**

**THIS ASSIGNMENT** is made without recourse, representation or warranty, express or implied.

**IN WITNESS WHEREOF**, Assignor has caused this instrument to be duly executed as of 06/    /2019, by a duly authorized agent.

**Mortgage Electronic Registration Systems, Inc. ("MERS"), as designated nominee for Stockman Bank of Montana, Beneficiary of the security instrument, its successors and assigns**

Shannyn Warrick      06/ 10 /2019
**Assistant Vice President**

State of: ARIZONA

County of: MARICOPA

On June __10__ , 2019, before me, __Annette Ayiers__ , a Notary Public, in and for said state and county, personally appeared,  Shannyn Warrick, personally known tome to be the person whose name is subscribed to within instrument and acknowledged to me that she executed the same in her authorized capacity as the Assistant Vice President of **Mortgage Electronic Registration Systems, Inc. ("MERS"), as designated nominee for Stockman Bank of Montana, Beneficiary of the security instrument, its successors and assigns**, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal.

NOTARY PUBLIC
My Commission Expires __7/24/2020__

Annette Ayiers
Notary Public
Maricopa County, AZ
My Comm Expires July 24, 2020

**402 10th Avenue Southwest, Sidney, MT 59270 - AOM**

Limited Power of Attorney

Ditech Financial LLC (f/k/a Green Tree Servicing LLC) (hereinafter called "Ditech") hereby appoints NewRez LLC (f/k/a New Penn Financial, LLC) d/b/a Shellpoint Mortgage Servicing (hereinafter called "Shellpoint"), as its true and lawful attorney-in-fact to act in the name, place and stead of Ditech for the limited purposes set forth below. This Limited Power of Attorney is given in connection with the certain Subservicing Agreement by and between Fannie Mae ("Fannie Mae") and Shellpoint dated as of October 1, 2019 (the "Agreement") to service certain mortgage assets (the "Servicing Rights") that were previously serviced by Ditech pursuant to a Subservicing Agreement by and between Ditech and Fannie Mae dated as of December 22, 2010. Unless otherwise defined herein, capitalized terms will have the meanings specified in the Agreement.

Now therefore, Ditech does hereby constitute and appoint Shellpoint as the true and lawful attorney-in-fact of Ditech and in Ditech's name, place and stead with respect to each Asset as defined in the Agreement, and regarding which Ditech may be the current lienholder of record, for the following, and only the following purposes:  transferring the servicing of the Assets to Shellpoint and effectuating the efficient servicing of the Assets.  Ditech names, constitutes and appoints Shellpoint as its duly authorized agent and attorney-in-fact, with full power and authority in its name, place and stead to (i) execute, acknowledge, seal and deliver any and all documents, deeds, transfers, tax declarations, certificates, modifications, affidavits, endorsements, short sales, and any other documents or instruments whatsoever which are necessary, appropriate, or required to transfers, sell, or convey real property, to correct or clear title to the related real property, to negotiate, approve and accept funds for the short sales of real property, to initiate and/or pursue foreclosure or other legal actions with respect to the Assets, including but not limited to the continuance of actions initiated by or on behalf of Ditech; (ii) initiate and take such actions, and to execute, acknowledge, seal and delivery any and all documents or instruments whatsoever, such as deeds and other documents, as are necessary, appropriate, or required to sell or convey real and personal property securing the Assets, including, but not limited to, signing deeds to convey real property acquired through foreclosure of an Asset or acceptance of a deed in lieu of foreclosure (including without limitation the completion of judicial and non-judicial foreclosure or the termination, cancellation or rescission of any such foreclosure), insurance filings and claims, bankruptcy and eviction actions, real estate transactions, and the pursuit of any deficiency, debt or other obligation, or deeds of trust to convey title from Ditech to Shellpoint under this Limited Power of Attorney; (iii) execute documents and instruments necessary to release any and all mortgages, deeds of trust, security instruments, liens, security interests or related documents with respect to the Assets;  (iv) execute documents and instruments necessary to release/satisfy/reconvey all obligations under any promissory note or related documents with respect to the Assets; (v) execute documents and instruments necessary to assign or transfer any Mortgage Note, including, but not limited to, any allonge or endorsement related thereto; (vi) execute documents and instruments necessary to sign subordination agreements and consent to easements related to the Assets; (vii) execute such documents as are necessary to assign the Assets (including assignments of mortgages on behalf of Ditech to Shellpoint, MERS, Fannie Mae, or other applicable Person); (viii) endorse checks and other payment instruments that are payable to the order of Ditech and that have been received by Shellpoint from mortgagors or any insurer in respect of insurance proceeds related to any Asset; and (ix) execute such other documents as

P/ATTY    Book: DE 2581  Page: 1387 - 1389
November 20, 2019  11:03:18 AM
Rec: $25.00
FILED IN GREENVILLE COUNTY, SC

2019092802
3 Pgs

may be necessary or appropriate to enable Shellpoint to carry out its servicing and administrative duties with respect to the Assets.

Ditech further grants to its attorney-in-fact full authority to act in any manner both proper and necessary to exercise the foregoing powers, and ratifies every act that Shellpoint may lawfully perform in exercising those powers by virtue hereof.

This Limited Power of Attorney shall expire on the date that Shellpoint becomes mortgagee of record of such Asset.

IN WITNESS WHEREOF, Ditech has executed this Limited Power of Attorney this _31st_ day of _October_, 2019.

DITECH FINANCIAL LLC

By: _____
Name:  Michael Squillante
Title:    Chief Operations Officer

Witness: _____
Name:      William Keller

Witnesses: _____
Name:      Rachel Finlayson

ATTEST:

By: _____
Name:  Laura Reichel
Title:    Sr. VP, Gov't Agencies, Product Dev.
             & Industry Relations

ACKNOWLEDGMENT

STATE OF PENNSYLVANIA

COUNTY OF MONTGOMERY

On this _31st_ day of _October_, in the year 2019 before me, the undersigned, personally appeared Michael Squillante and Laura Reichel, personally known to me to be the persons who executed the within instrument as Chief Operations Officer and Sr. VP, Gov't Agencies, Product Dev. & Industry Relations, on behalf of Ditech Financial LLC (f/k/a Green Tree Servicing LLC), and they acknowledged that said instrument is the act and deed of Ditech Financial LLC (f/k/a Green Tree Servicing LLC), and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Sworn to (or affirmed) and subscribed before me this _31st_ day of _October_ 2019.

(SEAL)

_____
Notary Public
My Commission Expires:

```
Commonwealth of Pennsylvania - Notary Seal
       Diana Veasey, Notary Public
            Montgomery County
  My commission expires March 19, 2023
       Commission number 1171281
```